of the Court of Appeals of Maryland, which we adopt as our own.

*AFFIRMED*

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dariusz Piotr KIULIN, Defendant–Appellant.**

No. 02–4831.

United States Court of Appeals, Fourth Circuit.

March 16, 2004.

Argued: Jan. 23, 2004.

Decided: March 16, 2004.

Hal W. Broadfoot, Jr., Beaver, Holt, Sternlight, Glazier, P.A., Fayetteville, North Carolina, for Appellant. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. Richard B. Glazier, H. Gerald Beaver, Beaver, Holt, Sternlight, Glazier, P.A., Fayetteville, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILKINSON and Judge MICHAEL joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant Dariusz Piotr Kiulin pleaded guilty to possessing, with intent to distribute, 3,4–Methylenedioxymethamphetamine (popularly known as ecstasy) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and to interstate travel with the intent to promote an unlawful activity in violation of 18 U.S.C. §§ 1952(a)(3) and 2. The district court sentenced Kiulin to 151 months in prison for the first violation and 60 months, to run concurrently, for the second violation. Kiulin now appeals from the district court's determination of his sentence.

## I.

Appellant, Kiulin, was riding in the passenger seat of a rental car, driven by Piotr Franciszek Cetera, when the car was stopped by Deputy Steven Lovin of the Robeson County, North Carolina Police Department, for weaving between lanes. After routine questioning of both Cetera and Kiulin, Kiulin consented to a search of the car. In the course of the search, Deputy Lovin discovered 2,996 pills of ecstasy, $11,603 in United States currency, and $78,250 in Canadian currency, all wrapped separately in a black t-shirt and hidden in the car's trunk under the spare-tire cover. Deputy Lovin also found $9,337 in money orders in Kiulin's bag. Converted to United States dollars, the total amount of money in Kiulin's possession was $67,987.96.

Kiulin and Cetera were subsequently arrested, and, after waiving his *Miranda* rights, Kiulin was interrogated by the Robeson County police. After questioning, Kiulin signed a statement that the ecstasy found in the rental car did not belong to him, but, instead, belonged to a man named "Steve," who Kiulin met at a bar in Toronto, Canada, and knew only by first name; the statement reported that during this initial meeting Steve offered to pay Kiulin $10,000 to drive the pills to

south Florida and that, at a subsequent meeting the next day, Kiulin accepted the offer. J.A. 26. The statement further recited that, after accepting the offer, Kiulin flew to Newark, New Jersey, rented a car, and drove 400 miles to Niagara Falls, where he reunited briefly with Steve. J.A. 26–27. At this time, Steve gave Kiulin both the pills and the money, which Kiulin believed to be "drug money," eventually-found by Deputy Lovin in the car. J.A. 27. Steve also gave Kiulin an initial payment of $6,000 for his services, and promised to pay the remaining $4,000 after Kiulin delivered the "merchandise." *Id.* Kiulin was in the process of transporting the money and the pills to Florida, pursuant to his agreement with Steve, when he was stopped by Deputy Lovin.

The signed statement did not include any reference to the role that Cetera, the driver of the car, played in the transportation of the pills. However, roughly three days after Kiulin signed the statement, Deputy Lovin prepared a typed attachment, documenting additional statements that Kiulin had made relating to Cetera on the day of his arrest. The attachment stated that Kiulin had said that Cetera accompanied him from Newark to Niagara Falls, that Cetera had helped him hide the pills and cash in the trunk of the car, and that Kiulin planned to divide the $10,000 payment from Steve with Cetera. J.A. 27–28, 102. That Cetera played an active role in the trafficking of ecstasy was also confirmed by two inmates at the Robeson County Jail, both of whom testified under oath at Cetera's trial that Kiulin and Cetera spoke "openly and freely" about this and other drug trafficking experiences to them and other inmates while incarcerated. J.A. 39–41.

On January 1, 2002, the government recorded a conversation between Cetera and Andrew Kubiak, a.k.a. Przemek, a mutual friend of both Cetera and Kiulin, in which Cetera told Kubiak that he and Kiulin "agreed that [Kiulin] will say that [Cetera] had nothing to do with" the transportation of the pills and money. J.A. 38. Later in the conversation, Cetera asked Kubiak, who had recently spoken to Kiulin, whether Kiulin "changed his statement." Kubiak assured him that Kiulin had not. J.A. 39. In response to this assurance, Cetera told Kubiak, "I have a chance because, you know, he said that everything is his." *Id.*

Kiulin's later statements regarding Cetera's involvement in the transportation of ecstasy were consistent with Cetera's description of the agreement that he and Kiulin had struck. In contrast to the statement that Kiulin made to Deputy Lovin, Kiulin told Agent Stogsdill that he did not pick Cetera up until *after* he had driven to Niagara Falls and received the pills and cash from Steve. J.A. 65. He further stated that, although Cetera helped him hide the pills and cash in the trunk, he could not remember whether he had informed Cetera that either were connected to illicit activity. J.A. 66–67.7

On April 1, 2002, without an agreement with the United States, Kiulin pleaded guilty to possession of ecstasy with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and to interstate travel with the intent to promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3). At sentencing, the district court determined that all of the money found in Kiulin's possession at the time of his arrest was drug-related, and converted that amount of money into ecstasy doses by valuing ecstasy at $20 per pill. In addition, the district court held that Kiulin had obstructed justice-and added two sentencing levels pursuant to U.S.S.G. § 3C1.1. The district court also concluded that Kiulin was neither a "minor" participant in this crime under U.S.S.G. § 3B1.2, nor a "lead-

er" under U.S.S.G. § 3B1.1, and refused to adjust Kiulin's sentence on either basis. Finally, the district court denied Kiulin a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Kiulin now appeals numerous aspects of the district court's sentencing determinations.

## II.

Kiulin first challenges the district court's finding that he qualified for a two level increase for obstructing justice under U.S.S.G. § 3C1.1. He argues that his statements to Agent Stogsdill and others, that Cetera did not accompany him to Niagara Falls to receive ecstasy and money and that he did not know if Cetera was aware that illegal drugs were in the car, cannot serve as a basis for an obstruction of justice enhancement because they were statements describing the true course of events, not, as the district court held, part of an agreement by which he would lie to protect Cetera from criminal liability.

In order to apply a sentencing enhancement under U.S.S.G. § 3C1.1, the district court must conclude that the government has shown, by a preponderance of the evidence, that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice...." *United States v. Puckett*, 61 F.3d 1092, 1095 (4th Cir.1995). We will not disturb a district court's factual findings at sentencing, including those that serve as a basis for its application of an obstruction of justice adjustment, unless they constitute clear error. *See, e.g., United States v. Stewart*, 256 F.3d 231, 253 (4th Cir.2001).

In this case, it is clear that the district court's finding that Kiulin entered into an agreement to lie in an attempt to exonerate Cetera is not only not clearly erroneous, but, in fact, based on a strong

evidentiary foundation. First and foremost, in a conversation recorded by the government, Cetera told Andrew Kubiak, a friend of both Cetera's and Kiulin's, that he and Kiulin, "agreed that [Kiulin] will say that [Cetera] had nothing to do with" the transportation of the pills and money. In response, Kubiak reassured Cetera that he had recently spoken with Kiulin about this agreement and that Kiulin intended to honor it. J.A. 39. Kiulin urges that this conversation must be interpreted as showing nothing more than that he had agreed not to implicate Cetera in an offense in which Cetera was not involved. Kiulin's actions do not support such an innocuous interpretation, however. In the interrogation that immediately followed his arrest, Kiulin informed Deputy Lovin that Cetera had accompanied him to obtain the ecstasy and money in Niagara Falls, helped him to hide the ecstasy and money in the rental car, and that he planned to reward Cetera for his help by splitting the payment for transporting the contraband. J.A. 24–25, 102. Only after Kiulin and Cetera spent time together in the Robeson County Jail did Kiulin begin to claim that he alone traveled to Niagara Falls to receive the ecstasy, and that, to his knowledge, Cetera did not know whether the pills and money were illegal. These claims not only conflicted with Kiulin's earlier statements to Deputy Lovin on the day of his arrest, but also with the reports of two of Kiulin's cellmates at the Robeson County Jail, who testified under oath that Kiulin and Cetera spoke "openly and freely" about their experiences trafficking drugs together and about the amount of money that they had made as a result.

On the basis of this evidence, the inference drawn from the recorded conversation by the district court was well supported and certainly not clearly erroneous. We therefore affirm the district court's

conclusion that Kiulin obstructed the administration of justice.[1]

### III.

■■■ To calculate the total drug quantity related to Kiulin's offense for the purpose of determining his base offense level, the district court combined the 2,996 pills of ecstasy found in the car with the "drug equivalent" of the $67,987.96 of currency found alongside it. The court determined the "drug equivalent" of the currency by dividing the value of the currency, $67,987.96, by $20, the estimated cost of a single pill of ecstasy. On appeal, Kiulin does not dispute that this currency was "drug money," and should have been included in the calculation of the total quantity of drugs for which he was responsible, *see United States v. Hicks,* 948 F.2d 877, 882 (4th Cir.1991) (providing that a district court may include the "drug equivalent" of cash related to drug activity in calculating the total quantity of drugs related to the offense). Rather, he contends that the district court must be reversed because it did not "err on the side of caution" in its valuation of ecstasy at $20 per pill and, for this reason, improperly inflated its approximation of the total amount of drugs attributable to Kiulin. *See United States v. Scheele,* 231 F.3d 492, 499 (9th Cir.2000) (Reinhardt, J.).

This court has not heretofore required that sentencing courts "err on the side of caution" in approximating drug quantity, and we decline to do so today. In those circuits where such caution is required at sentencing, it is justified, not as a matter of course, but instead as a prophylactic measure to ensure that, when a sentencing court "is choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity," the amount attributed to the defendant is supported by the preponderance of the evidence. *See United States v. Walton,* 908 F.2d 1289, 1301–02 (6th Cir. 1990); *see also United States v. August,* 86 F.3d 151, 154 (9th Cir.1996) (relying on justification set forth in *Walton* to require district courts to "err on the side of caution"); *United States v. Sklar,* 920 F.2d 107, 113 (1st Cir.1990) (same). We do not agree that it is necessary to impose this restraint on the discretion of sentencing courts in order to prevent them from making findings unsupported by a preponderance of the evidence; sentencing courts are bound to abide by the mandates of the guidelines, just as this court is, and, when they fail to do so, both their legal and factual findings are subject to our review. Thus, we hold that a district court need not "err," on the side of caution or otherwise; it must only determine that it was more likely than not that the defendant was responsible for *at least* the drug quantity attributed to him. *See United States v. Cook,* 76 F.3d 596, 604 (4th Cir.1996). Of course, its calculation of drug quantity, once made, is a factual finding, which we thereafter review for clear error. *See United States v. Carter,* 300 F.3d 415, 425 (4th Cir.2002).

■■■ Moreover, because the district court, in this case, accepted the valuation

---

1. Kiulin also objects to the district court's refusal to adjust his offense level downward for an acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Because we conclude that the district court was correct in finding that Kiulin entered into an agreement with Cetera to shield Cetera from criminal liability, and, in furtherance of this agreement, actively attempted to mislead state and federal law enforcement (and the court) as to the nature of Cetera's involvement in the offense, we affirm the district court's finding that Kiulin had not fully accepted responsibility for his offense, and, therefore, did not merit a downward departure on this basis.

of ecstasy at $20 per dose from the presentence report, Kiulin, as the defendant, had "the affirmative duty to show that the information contained in the report [was] inaccurate or unreliable." *Id.* After reviewing the evidence before the district court, we conclude that Kiulin failed to show that the $20 estimate in the presentence report was either "unreliable or inaccurate" and that the district court's valuation of ecstasy at $20 per pill therefore was not clearly erroneous. The estimation that a pill of ecstasy cost $20 was supported in the presentence report by Special Agent Phil Kearney of the Drug Enforcement Agency (DEA), a law enforcement officer who, it is reasonable to presume, possessed specialized knowledge of the price of ecstasy in North Carolina at the time of Kiulin's arrest. J.A. 103. Neither of the two government reports presented by Kiulin to the district court contradicted this figure—or even purported to offer a contemporaneous estimate of the cost of ecstasy at the time of Kiulin's arrest. The first, a July 2000 report on ecstasy prepared by the Office of National Drug Policy, J.A. 140–42, appeared to rely on national data from 1996–99 and estimated that ecstasy sells for from $20–30 per pill, a range that actually confirms the reliability and accuracy of the price of $20 per pill reflected in the presentence report. The second, a web page entitled, "Additional Drugs of Abuse Reported by Criminal Intelligence Division, Maryland Department of State Police," released by the National Institute on Drug Abuse, J.A. 144–51, reported that ecstasy costs between $25–45 a pill, but appeared to base this estimate on data collected by Maryland state police from 1992–94. The $20 per pill figure used by the district court falls outside the $25–45 range suggested by this report, but this proves little about the accuracy or reliability of either figure. In fact, it suggests, if anything, that the price of ecstasy

declined between 1992–94, when the data relied upon by the report was collected, and October 2001, the date of Kiulin's arrest.

In light of Kiulin's failure to produce any evidence to suggest that the $20 per pill amount was unreliable, we believe that it was far from clear error for the district court to accept the presentence report's price of $20 per pill. Not only did this estimated price fall within the price range for ecstasy set forth in the more recent (and relevant) report submitted to the district court by Kiulin himself, it was also based on more current, and specialized, knowledge of the likely price of ecstasy than any source relied upon by Kiulin. We therefore affirm the district court's calculation of drug quantity.

**IV.**

 Kiulin also challenges the inclusion of information in paragraphs 10, 15 and 16 of the presentence report, related to his frequent international travels in the year preceding his arrest and to two reports prepared by the United States Customs Service implicating him in potentially criminal activity. He cites no legal authority for this challenge, however, and our review suggests that there is none.

The inclusion of information about the defendant in the presentence report, even information not directly related to his commission of the instant offense, is clearly permitted by statute. 18 U.S.C. § 3661 expressly provides that,

> No limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

The information also did not have an impermissible effect on Kiulin's sentence. The district court did not rely on any of this information to support the calculation of Kiulin's offense level, J.A. 112, or his criminal history category, J.A. 105–06. And, even accepting that the information affected the district court's determination of a particular sentence within the guidelines range, Kiulin may not challenge it on appeal. *See United States v. Porter*, 909 F.2d 789, 794 (4th Cir.1990).

### V.

■ Kiulin's final argument is that the district court erred by refusing to find that he was a minor participant under U.S.S.G. § 3B1.2(b). A district court's assessment of the level of a defendant's involvement in any particular offense is a factual finding, which, again, we review for clear error. *See United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989).

■ Although Kiulin argues that he was a "mere courier" of the drugs and money and unaware of the precise nature of the substance involved in his crime, *see* U.S.S.G. § 3B1.2 comment. 3(A) (providing that a defendant whose role in an offense is limited to "transporting ... drugs ... is not precluded from consideration for an adjustment under this guideline"), the evidence before the district court provided ample support for its conclusion to the contrary. Kiulin agreed to transport a substantial amount of ecstasy from the Canadian border to south Florida. He traveled across state lines to rent a car for that purpose, and recruited Cetera to participate in the transportation of the drugs with him. Moreover, according to Kiulin's fellow inmates at the Robeson County Jail, Kiulin bragged that he and Cetera often engaged in such trips and had been paid well for their efforts. Thus, the district court's conclusion that Kiulin

was not a minor participant in the distribution of ecstasy was well founded.

### CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed in all respects.

*AFFIRMED*