**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 05-4492**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SELVIN AGUILAR DISCUA,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Fox, Senior
District Judge. (CR-04-290)

─────────────

Submitted: June 8, 2006            Decided: July 10, 2006

─────────────

Before KING, GREGORY, and SHEDD, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Walter H. Paramore, III, Jacksonville, North Carolina, for
Appellant.  Frank D. Whitney, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Jennifer P. May-Parker,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Selvin Aguilar Discua appeals from his convictions and sentence imposed for offenses arising from a multi-state conspiracy to transport stolen baby formula. He contends (1) that the evidence was insufficient to support his convictions, (2) that the district court erred in calculating his Guidelines sentencing range, and (3) that his sentence is unreasonable. As explained below, we reject his contentions and affirm.

I.

Although we spend a good deal of time deciding conspiracy cases, few involve as unique a subject matter as this one.[*] The conspiracy to transport stolen baby formula underlying this appeal originated in North Carolina sometime in 2000. Its ringleaders were seven Hondurans, most of whom were related (the "family"). Under the scheme, the family employed forty-five to fifty individuals (called "clients") who would steal baby formula from any store where it was sold. When a client had amassed enough formula, he would transport it either to a storage unit rented by the family or directly to a shipping terminal. The family would then ship the formula by the truckload to buyers in Wisconsin, Ohio, and Kentucky (the "buyers").

---

[*]Because Discua challenges the sufficiency of the evidence supporting his convictions, we present the evidence in the light most favorable to the prosecution.

2

The buyers generally paid the family in cash, shipped via UPS or Federal Express, in amounts ranging from $ 40,000 to $90,000 per delivery of formula. The family would then pay its clients a portion of the proceeds and retain the balance as profit. Using bills of lading obtained from various shipping companies, the FBI conservatively estimated that the value of the formula stolen in the course of the conspiracy was $13 million.

Among the family's clients was a woman known in this proceeding only as Nancy. She became a client in early 2003 and continued in that capacity until the conspiracy unraveled in late 2004 due to the arrest of many of its participants. According to the trial testimony of many of the family's members, during the period of her participation, Nancy delivered between 400 and 600 bottles of formula to the family about three times a month. Discua, her boyfriend, accompanied her on most of the deliveries, driving the delivery vehicle and helping to unload the formula. Although the family usually paid Nancy directly, Discua occasionally collected the payments owed. On one occasion in 2003, Discua initiated an argument with a member of the family concerning a payment he claimed was late. He was told that the family had not yet been paid by the buyers and that the family was unable to pay its clients for the formula they provided until after the buyers had paid for such formula.

In August 2004, the authorities closed in on the conspiracy and arrested many of its participants, including Discua and several members of the family. On October 14, 2004, the grand jury in the Eastern District of North Carolina returned a multi-count indictment against several of those arrested, including Discua. As relevant here, the indictment charged Discua with conspiring to transport stolen goods across state lines, in contravention of 18 U.S.C. § 371, and with aiding and abetting the interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314. Although most of the charged conspirators pleaded guilty and agreed to cooperate with the government, Discua exercised his right to a jury trial.

At his trial, conducted from February 8 to February 11, 2005, several members of the family testified for the prosecution. In addition to describing the facts related above, they recounted that, prior to trial, Discua had implored them not to testify against him. Discua also advised them that his family knew where their families lived, an assertion they interpreted as an implied threat intended to dissuade them from testifying against him.

At the end of the prosecution's case-in-chief and after all evidence had been presented, Discua moved for judgments of acquittal. Both motions were denied, and on February 11, 2005, the jury returned a verdict finding Discua guilty on both counts. His presentence report (the "PSR") recommended setting his base offense

4

level at 6, and recommended four enhancements:  a twenty-level enhancement for a loss of over $8 million, representing seventy-five percent of the value of the formula shipped during Discua's participation in the conspiracy, see U.S.S.G. § 2B1.1(b)(1); a two-level enhancement for a number of victims between ten and fifty, see U.S.S.G. § 2B1.1(b)(2); a two-level enhancement for receiving and selling stolen property, see U.S.S.G. § 2B1.1(b)(4); and a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1. Discua's total recommended offense level was thus 32, which combined with criminal history category II, yielded a sentencing range of 135 to 168 months imprisonment.  Discua filed written objections to the proposed enhancements for the amount of loss, the number of victims, and obstruction of justice.  He also asserted that he was entitled to a downward adjustment, under § 3B1.2 of the Guidelines, for playing a reduced role in the conspiracy.

The district court conducted Discua's sentencing hearing on April 26, 2005.  At that hearing, the court adopted the recommendations of the PSR and declined to grant Discua a downward adjustment for playing a reduced role in the conspiracy.  The court ultimately sentenced Discua to a term of 151 months imprisonment. Discua has timely noted his appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In assessing a challenge to the sufficiency of the evidence supporting a conviction, we are obliged to affirm unless we conclude that, viewing the evidence in the light most favorable to the prosecution, no reasonable trier of fact could find the defendant guilty. See United States v. Bursey, 416 F.3d 301, 306 (4th Cir. 2005). We review each of the following for clear error: (1) a sentencing court's calculation of loss and number of victims under § 1B1.1 of the Guidelines, see United States v. Pierce, 409 F.3d 228, 234 (4th Cir. 2005); (2) a court's assessment under § 3B1.2(a) of a defendant's role in an offense, see United States v. Kiulin, 360 F.3d 456, 463 (4th Cir. 2004); and (3) a court's conclusion under § 3C1.1 that a defendant's statements were obstructive, see United States v. Hughes, 401 F.3d 540, 560 (4th Cir. 2005). Finally, we review for reasonableness a sentence imposed under the advisory Sentencing Guidelines regime. See United States v. Booker, 543 U.S. 220, 261 (2005).

## III.

By this appeal, Discua makes three primary contentions: (1) that the evidence is insufficient to support his convictions; (2) that the district court erred in calculating his Guidelines sentencing range, and (3) that his sentence is unreasonable. We assess each contention in turn.

A.

Discua first asserts that the prosecution's evidence was insufficient to support his convictions. With respect to both the conspiracy offense and the substantive offense of transporting stolen goods, Discua asserts that he only acted as a chauffeur for Nancy and was unaware that the baby formula he helped to deliver had been stolen. These assertions are belied by the evidence. First, Discua's role was not limited to driving Nancy to deliver the formula to the family. He usually helped the family unload it from his vehicle, occasionally accepted payment for the formula, and once initiated an argument with a member of the family concerning a payment he believed to be late. Second, there is ample evidence demonstrating that Discua knew of the conspiracy's unlawful nature. Even under Discua's theory of the case, his girlfriend Nancy stole the baby formula that he helped deliver to the family. A trier of fact could easily infer from the closeness of the relationship between Discua and Nancy and his extensive involvement in delivering the formula that he was aware that the formula was stolen. Moreover, a trier of fact could infer consciousness of guilt from the fact that Discua asked the prosecution witnesses not to testify against him and threatened harm to their families if they did so. See United States v. Young, 248 F.3d 260, 272 (4th Cir. 2001) (observing that evidence of witness intimidation is admissible to prove consciousness of guilt

7

if related to charged offense).  The evidence was thus sufficient to support both of Discua's convictions.

### B.

Discua makes three contentions regarding the court's computation of his Guidelines sentencing range:  (1) that the court clearly erred in calculating the amount of loss and the number of victims attributable to him; (2) that the court clearly erred in finding that his role in the conspiracy was neither minimal nor minor; and (3) that the court clearly erred in finding that he obstructed justice by threatening prosecution witnesses.

### 1.

With regard to the amount of loss and number of victims, Discua does not dispute that the district court correctly calculated the amount of loss and number of victims caused by the conspiracy as a whole; rather, he only asserts that the amount of the loss and number of victims is not attributable to him.  In applying § 1B1.1 of the Guidelines, a district court need only make a "reasonable estimate" of the amount of loss and number of victims.  United States v. Pierce, 409 F.3d 228, 234 (4th Cir. 2005).  As a general rule, any harm caused in furtherance of a conspiracy during the period in which a defendant is a participant in the conspiracy is attributable to the defendant under § 1B1.1 so long as the harm is a reasonably foreseeable consequence of the conspiracy.  See United States v. Newsome, 322 F.3d 328, 338 (4th

8

Cir. 2003). In this case, the district court did not err in determining that Discua's participation was such that he could reasonably foresee the scope of the conspiracy. Discua made numerous deliveries of formula to the family during the period of his participation, many of them directly to shipping terminals. Moreover, the evidence demonstrates that Discua was aware of the overall structure of the scheme. For example, during his argument with a member of the family concerning the late payment, he was told that payment was late because the family had not yet received payment from the buyers. Given that Discua, from his position within the conspiracy, could have surmised the scope of the conspiracy, he could have reasonably foreseen both the amount of loss caused by the conspiracy as well as the fact that there were more than ten victims.

2.

Discua next asserts that the district court clearly erred in finding that his role in the conspiracy was neither minimal nor minor. A defendant is entitled to a four-level downward adjustment if he was a "minimal participant" in the criminal activity. U.S.S.G. § 3B1.2(a). Even if a defendant's role cannot be characterized as "minimal," he is entitled to a two-level reduction if his participation was "minor." § 3B1.2(b). The critical inquiry in determining whether a defendant is entitled to an adjustment for his role in the offense is "not just whether the

9

defendant has done fewer bad acts than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." United States v. Pratt, 239 F.3d 640, 646 (4th Cir. 2001) (internal quotation marks omitted). At the sentencing hearing, the court found that, based on the quantity of formula that he delivered to the family, Discua was not merely a client who stole the formula, but a mid-level participant who received stolen formula from others and then delivered the formula to the family. This finding is not clearly erroneous and easily justifies the court's conclusion that Discua's role was "material" to the conspiracy. Id.

3.

Discua also asserts that the court clearly erred in finding that he obstructed justice by threatening members of the family who intended to testify against him. Discua does not dispute that threatening a witness constitutes obstruction of justice. See U.S.S.G. § 3C1.1, cmt. n.4(a) (observing that threatening or intimidating witness constitutes obstruction of justice). Nor does he dispute that he implored the witnesses not to testify against him and advised them that his family knew where their families lived. Rather, Discua asserts that his statements could not have been reasonably interpreted as a threat and that, in any event, the witnesses did not actually feel threatened. These assertions are meritless. First, the sentencing court did not clearly err in

10

interpreting as a threat Discua's statement that his family knew where the witnesses' families lived. Although the threat was implied rather than express, a less subtle implicit threat would be difficult to imagine. Second, because an attempted threat also constitutes obstruction of justice, see id., it is irrelevant whether the witnesses actually felt threatened. The sentencing court thus did not clearly err in finding that Discua obstructed justice and enhancing his sentence accordingly.

C.

Finally, Discua contends that his sentence was unreasonable under the standard set forth in United States v. Booker, 543 U.S. 220 (2005). We disagree. First, the sentencing court properly followed the procedure we outlined in United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005), calculating Discua's sentencing range under the Guidelines and then considering the factors provided in 18 U.S.C. § 3553(a). Second, Discua's sentence fell within the advisory Guidelines range and is thus "entitled to a rebuttable presumption of reasonableness." United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). In attempting to rebut this presumption, Discua only asserts that his sentence is unreasonable because he received a greater sentence than members of the family who he considers more culpable than himself. Although the disparity between Discua's Guidelines sentence and the sentences imposed on members of the family might have justified a

11

variant sentence, <u>see</u> § 3553(a)(6) (providing that sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"), the mere fact that he received a sentence greater than those received by members of the family is insufficient to rebut the presumption of reasonableness.

IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid in the decisional process.

<u>AFFIRMED</u>

12