**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-4368

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL ANTHONY DARBY,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Orangeburg.  Margaret B. Seymour, District
Judge.  (5:07-cr-01253-MBS-1)

Argued:  September 21, 2011        Decided:  November 29, 2011

Before DUNCAN and AGEE, Circuit Judges, and Damon J. KEITH,
Senior Circuit Judge of the United States Court of Appeals for
the Sixth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** William Michael Duncan, AUSTIN & ROGERS, PA, Columbia,
South Carolina, for Appellant.  John David Rowell, OFFICE OF THE
UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.
**ON BRIEF:** William N. Nettles, United States Attorney, Columbia,
South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Michael Darby contests the sufficiency of the evidence leading to his conviction on one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Darby also challenges the resulting 292-month sentenced imposed by the district court. For the reasons that follow, we affirm.

I.

A.

On October 17, 2007, Michael Darby and codefendant Melvin Wright were both indicted in Columbia, South Carolina on charges of conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) ("Count One"), and possession with intent to distribute and distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) ("Count Two"). Count One of the indictment alleges that the conspiracy begins "at least in the middle to late part of 2003." The charges largely stem from a controlled purchase of

2

crack cocaine whereby Darby's ex-girlfriend, Keesha Williams, agreed to act under the advisement of the Orangeburg Department of Public Safety and purchase crack cocaine from Darby while employing audio and video recording devices.

On November 30, 2006, unbeknownst to Michael Darby, Keesha Williams called Lieutenant Samuel Jenkins of the Orangeburg Department of Public Safety explaining that she could "help him bring down Michael Darby" by getting Darby to sell her narcotics. Williams agreed to have her communications with Darby recorded. In one recorded phone conversation, Williams began by inquiring if the receiver was Darby and Darby replied affirmatively. Williams continued by inquiring if she could purchase an "ounce" for her cousin. Darby replied, "I probably could get it to him, but I don't want to meet him." Darby established the purchase price for the ounce of cocaine to be $800.

The next day, on December 1, 2006, Williams drove to Darby's apartment with audio and video recording devices installed in her car. Upon arriving at Darby's apartment, Darby informed Williams that he could not sell Williams the cocaine at that time because he had to still "cook it up." Darby explained that he only had "salt," or powder form of cocaine, and not "hard," the crack cocaine that Williams sought to purchase. Darby informed Williams that the transaction would take place at

3

codefendant Melvin Wright's residence and that the cost would increase to $850. Though Darby's face is not captured in the video, his voice is identified in an audio recording. Williams drove to Wright's residence after obtaining an additional $50 to cover the price increase of the crack cocaine. After Williams arrived at Wright's house, she witnessed Darby arrive and enter Wright's house without speaking. Wright actually conducted the drug sale by handing Williams crack cocaine through the window. Shortly after the transaction between Williams and Wright, Williams called Darby at the behest of Lt. Jenkins to inquire why Darby did not personally deliver the crack cocaine to her and instead chose to involve Wright. Darby replied that Wright makes all of his transactions. Williams gave the crack cocaine to Lt. Jenkins. Williams underwent a comprehensive "strip" search both before she drove to Darby's apartment on December 1, 2006 and after she handed the drugs over to Lt. Jenkins.

The Government established the foregoing facts through the testimony of Keesha Williams. The government also produced several audio and video recordings. An audio recording revealed the initial phone conversation between Williams and Darby about the drug sale. A video recording from the camera installed in Williams's car captured the drug transaction between Williams and Wright. A chemical analysis established that Williams purchased 23.97 grams of crack cocaine.

4

The Government also called Joe Moultrie, a cooperating federal inmate, to testify about his prior drug dealings with Darby. Moultrie testified that he was a supplier for Darby and began supplying him with crack cocaine in 2002 when he sold Darby 28 grams of crack cocaine for $900. According to Moultrie, he supplied Darby with at least 28 grams of crack cocaine or more at least once or twice a month until Moultrie's arrest in 2004. Moultrie further testified that, by agreement, he would supply Darby with the crack cocaine and Darby would pay him later. In total, Moultrie estimated that he sold Darby five kilograms during his time supplying Darby with cocaine.

The Government also called another cooperating federal inmate and former drug dealer, Stacy Shannon, to testify pursuant to a written plea agreement in which he had received a sentence reduction. Shannon testified that he began dealing narcotics with Darby in 2003 when Darby came to him and requested to buy four and a half ounces of crack cocaine. He further testified that shortly thereafter, Darby began purchasing between 135 grams and two kilograms of cocaine powder from him. Shannon testified that Wright would often accompany Darby when Shannon conducted drug transactions with Darby. Shannon estimated that he supplied Darby with at least 200 kilograms of cocaine out of the 500 kilograms of cocaine he received while dealing cocaine.

5

Special Agent Stacy Brown with the Bureau of Alcohol, Tobacco, Firearms and Explosives also testified for the Government. Special Agent Brown provided the controlled funds for the transaction and testified that he was present on December 1, 2006 for the controlled purchase and the subsequent arrest of Darby. He further testified that after he advised Darby of his Miranda rights, Darby voluntarily made the statement that he was purchasing kilogram and half-kilogram quantities from a supplier in Mexico every two weeks for four months. Special Agent Brown testified that Darby also stated that he had purchased approximately 5 kilograms in total over the course of the four months he purchased cocaine from this supplier.

## B.

On December 19, 2008, a jury found Darby guilty of both the conspiracy charge (Count One) and the distribution charge (Count Two). The same jury found Wright not guilty on the conspiracy charge and guilty on the distribution charge. Darby filed a motion for acquittal on December 24, 2008, claiming that Wright's acquittal on the conspiracy charge leaves insufficient evidence that Darby conspired with anybody. He further claimed that insufficient evidence existed to support a

guilty verdict on Count Two. The district court denied the motion in an order filed April 20, 2009.

On January 4, 2010, the district court sentenced Darby to 292 months in prison. The 292 months was within the sentencing guidelines and based upon the court finding that Darby was responsible for at least 200 kilograms of cocaine throughout the conspiracy, putting him at a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1). The court also applied a firearm enhancement of two levels pursuant to U.S.S.G. § 2D1.1(b)(1). During sentencing, Darby submitted a motion to undergo a psychiatric evaluation to determine whether a lesser sentence would serve the goals of sentencing in Darby's case. Darby requested an authorization of $3,500.00 in funds for the evaluation. The court instead authorized $1,600. When new counsel was appointed for Darby, Darby submitted a supplemental motion requesting $3,500 for an evaluation. The court denied the motion. This appeal followed.

II.

Darby appeals the district court's denial of his motion for acquittal and his 292 month sentence. Darby contends that the guilty verdict on Counts One and Two was not supported by substantial evidence. As to Count One, Darby argues that there was insufficient evidence that he conspired to distribute

7

crack cocaine with anybody other than Wright, and Wright's acquittal on the conspiracy count creates insufficient evidence that he conspired with Wright. As to Count Two, Darby argues generally that there is insubstantial evidence that Darby is guilty of possession with intent to distribute and distribution of five grams or more of cocaine base.

Darby further challenges his sentence as being unreasonable and in violation of 18 U.S.C. § 3553(a). Specifically, Darby contests the district court's: (1) finding that Darby distributed at least 200 kilograms of cocaine; (2) application of the firearm enhancement; and (3) refusal to grant additional funds for a psychiatric evaluation. We discuss each argument in turn.

A.

We review a district court's denial of a motion for acquittal de novo. United States v. Green, 599 U.S. 360, 267 (4th Cir. 2010). In reviewing the sufficiency of the evidence to support a conviction, we assess whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). We must uphold the jury's verdict if there is substantial evidence to support the verdict when viewing the

8

evidence most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)(en banc)(citation omitted). A reviewing court does not assess the credibility of witnesses, but rather assumes "that the jury resolved all contradictions in testimony in favor of the Government." Green, 599 F.3d at 367 (quoting United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993).

1.

As a preliminary matter, we reject the notion that Darby's conviction should be vacated on the conspiracy charge merely because his co-conspirator Melvin Wright was acquitted on the same charge. It is well established that an acquittal of the appellant's alleged co-conspirator does not necessitate that the appellant's conviction be vacated. See United States v. Powell, 469 U.S. 57, 65 (1984)(holding that a defendant cannot challenge his conviction merely because it is inconsistent with jury's verdict of acquittal on another count); United States v. Collins, 412 F.3d 515, 519-20 (4th Cir. 2005)(refusing to

9

overturn a conspiracy conviction merely because a co-conspirator was acquitted by the same jury); United States v. Thomas, 900 F.3d 37, 40 (4th Cir. 2002)(holding that an acquittal of sole co-conspirator does not require reversal of defendant's conviction); see also United States v. Andrews, 850 F.3d 1557, 1561 (11th Cir. 1988)(en banc)("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."); United States v. Vales-Valencia, 823 F.3d 381, 382 (9th Cir. 1987) ("the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act").  Thus, a jury can acquit Wright and still find that a conspiracy existed between Darby and Wright.

Darby seems to argue more precisely that given Wright's acquittal, the totality of the evidence does not substantially show that Darby conspired with either Wright or anyone else.  We disagree.  To prove a conspiracy to possess cocaine base with intent to distribute, the Government must establish that:(1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984). Viewing the evidence most favorably to the Government, we find

10

that there was sufficient evidence to support a conviction for the conspiracy charge.

The evidence presented through Keesha Williams's testimony established an agreement by Darby to possess cocaine with the intent to distribute. In one recorded conversation between Williams and Darby, he agrees to sell Williams an "ounce" for her cousin, commenting that Darby could get the cocaine to him, but did not want to meet Williams's cousin. When Williams drove to meet Darby on the night of the controlled purchase, Darby instructed Williams to meet him at Wright's residence to buy the crack cocaine. This arrangement of selling illegal drugs at Wright's residence where the cocaine had to be "cooked up" at the very least evinces an agreement between Darby and Wright. Darby's presence at Wright's residence after his conversation with Williams corroborates this agreement and further establishes that he knowingly and voluntarily became a part in this conspiracy. Darby then told Williams, after the controlled purchase, that he used Wright to make all his purchases. This is patent evidence that a conspiracy existed to distribute drugs between Darby and Wright.

Notwithstanding the substantial evidence of a conspiracy established by Williams's testimony, Shannon provided further evidence of such a conspiracy. Shannon testified that he sold a total of 200 kilograms of cocaine to Darby, who agreed

11

to pay Shannon for the cocaine after he sold it. This agreement between Shannon and Darby is also sufficient evidence to establish a conspiracy. Shannon's testimony that Wright would often accompany Darby during his drug transactions is circumstantial evidence that a conspiracy existed between Wright and Darby. Moreover, Moultrie's testimony that he supplied Darby with cocaine establishes a conspiratorial agreement between Darby and Moultrie.

Since we find that there was sufficient evidence from which a reasonable juror could find that Darby was engaged in a conspiracy between two or more persons, we briefly address the charge in Count One that the conspiracy involved a distribution of 500 grams or more of cocaine and 50 grams or more with cocaine base. It is sufficient to note that Shannon's testimony that Darby received 200 kilograms of cocaine, Moultrie's testimony that he sold Darby five kilograms of cocaine, and Darby's own statement that he purchased five kilograms of cocaine from a supplier in Mexico all establish that at least 500 grams of cocaine and 50 grams of cocaine base was intended to be distributed throughout the conspiracy. We therefore find that the evidence was sufficient to support a guilty verdict as to Count One.

2.

Darby's contention that there is insufficient evidence to convict him on Count Two is equally unavailing. Darby asserts that there is little direct evidence linking him to the distribution of the crack cocaine because that the video recording does not show him exchanging crack cocaine for money and there were no phone records admitted to confirm that Williams was in fact talking to Darby. Darby argues that his conviction on Count Two is almost entirely based on what he believes to be a biased witness--Keesha Williams.

Williams's testimony against Darby is sufficient to uphold his conviction on Count Two. First, there is no requirement that the prosecution prove its case by direct evidence. Although there may not be a wealth of the direct and red-handed evidence that Darby would like to see, the proper standard is whether there exists substantial evidence--direct or circumstantial--for a rational juror to support a guilty verdict. In this case, there was a controlled purchase in which Darby was present at the scene of the transaction after responding to an offer to purchase drugs for a price that he set over a recorded phone conversation. Williams and Special Agent Brown both testified that Darby was present at the controlled purchase where Williams purchased 23 grams of crack cocaine. The fact that Wright handed the cocaine to Williams at the

behest of Darby does not absolve Darby from the charge of Count Two. Darby's own statement to Special Agent Brown that he purchased approximately 5 kilograms from his supplier over the preceding four months coupled with the evidence that Darby actively sold crack cocaine, as evidenced by the December 1, 2006 purchase, is sufficient to uphold Count Two.

Darby's argument discounting Williams's testimony and undermining the credibility of other prosecutorial witnesses gains no traction here.  As discussed above, a reviewing court does not assess the credibility of witnesses, but rather assumes that the jury resolved issues of credibility in favor of the Government.

B.

Darby challenges the district court's finding at sentencing which holds him accountable for the distribution of 200 kilograms of cocaine with 5 kilograms of cocaine base throughout the conspiracy charged in Count One.  This finding was necessary for the court to apply a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(C)(1).

1.

This court reviews a district court's calculation of drugs attributable to a defendant for clear error.  United

14

States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004). The sentencing guidelines advise the court that in a scenario "where there is not drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, Application Notes 12. We find that there is sufficient evidence in the record to support the district court finding that Darby was responsible for 200 kilograms of powder cocaine and 5 kilograms of cocaine base.

The 23.8 grams seized from Williams after the controlled purchase does not reflect the scale of Darby's conspiracy to distribute cocaine, so the district court was within its discretion to approximate the amount of cocaine for sentencing purposes. In determining the amount of cocaine to attribute to Darby, the district court properly relied upon the testimony of Shannon and Moultrie. Shannon testified that he supplied Darby a total of 200 kilograms of powder cocaine. Moultrie testified that he had sold Darby a total of 5 kilograms of cocaine base to Darby. We decline to hold that the district court clearly erred in relying on these two independent bases to approximate the quantity of cocaine for which Darby was responsible.

2.

Darby also contests the district court's application of the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), which increased the defendant's offense level by two levels. We review a district court's application of a firearm enhancement under this provision for clear error. United States v. Manigan, 592 F.3d 621, 626 (4th Cir. 2010).

The firearm enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." Id. at 628-29 (internal citations omitted). The Government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence. The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3.

To support the firearm enhancement, the Government relied on assertions in the presentence investigation report ("PSR") and Darby's statement to Special Agent Brown. The PSR reflected that upon Darby's arrest at his residence on November 8, 2007, agents found 3 firearms, including a .45 caliber pistol Darby admittedly retrieved from his nightstand when the agents entered his home to execute a search warrant. The Government proffered  that 400 grams of powder cocaine was found in Darby's

16

master bedroom and 471 grams of powder cocaine was found in total. Further, agents found 39.4 grams of crack cocaine, a set of digital scales, body armor, and $5,611.00 in U.S. currency at Darby's residence. We find that the Government met the preponderance of evidence standard in arguing that the guns, cocaine, drug paraphernalia, and body armor all indicate that Darby used the guns to protect himself and the drugs, which in turn shows that the weapons were used in connection to the charged offense. We therefore hold that there was no clear error on part of the district court in applying the firearm enhancement.

3.

Finally, Darby challenges the district court's refusal to pay the $3,500 fee requested by Darby to pay for the psychiatrist of his choice. The court originally approved a payment of $1,600 for Darby to hire a psychiatrist, but did not approve the extra $1,900 that Darby argued was necessary to obtain his preferred psychiatrist. He argues that had the court granted his request, his preferred psychiatrist's evaluation would have assisted in determining mitigation factors. Darby contends that the district court ultimately abused its discretion by denying Darby $1,900. We disagree.

17

We can find no case law, nor does Darby cite any, that stands for the proposition that a district court must approve the exact amount of funds that a defendant requests to enable him to hire the psychiatrist of his choice for the purpose of exploring mitigating factors during the sentencing phase of trial. Had this request been submitted to determine whether Darby was competent to stand trial, then we would inquire whether there was reasonable cause to believe that Darby was suffering from a mental defect which rendered him unable to understand the nature and consequences of the proceedings against him. See 18 U.S.C.A. § 4241(a) (West 2000 & Supp. 2007). However, this is not the case. Darby's argument, aside from having no basis in law, is highly speculative. He does not assert his incompetency either during the trial or after. Rather, he claims that an evaluation may have produced an opinion that would cause the district court to depart downward from the advisory guidelines. The only consideration that Darby points to is Darby's age and lack of a prior record. This is not enough to find that the court abused its discretion. Moreover, the court considered Darby's lack of a prior record in assigning him a Criminal History Category of I. The court ultimately imposed a sentence that was on the lower end of the advisory sentencing guidelines.

We find it important to highlight that the district court did grant Darby funds to procure a psychiatric evaluation. However minimal the approved funds may have been, Darby does not argue that the funds granted would be insufficient to hire a psychiatrist to conduct an evaluation--only that it was insufficient to hire his preferred psychiatrist.

We find that the court did not abuse its discretion in denying Darby's motion for additional funds for the purposes of a psychiatric evaluation. We further find that the sentence rendered by the district court was not an abuse of discretion as it was not only within the advisory sentencing guidelines, it was also at the lower end of those guidelines.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED